May it please the Court, my name is Kate Foss and I represent the appellant Giovanni Rosal. This case rests on two fundamental pieces of evidence, a Frommer's Guide catered to wealthy Americans and a promotional sales pitch to go to Guatemala. That is the sum in total of what the IJ and the BIA in approving the IJ's report cited as overwhelming evidence that Mr. Rosal could safely relocate to a different part of Guatemala. Wasn't there also a country report or human rights report saying that it wasn't unlawful, it wasn't a crime? Yes, Your Honor, well, it is not technically a crime to be gay in Guatemala. The country report also provides that there's no protections against discrimination in employment or other parts of life, for example, for being gay. And that same country report that the government submitted provides that violence and discrimination are ongoing against gay persons in Guatemala, that the police are involved in this violence, and that the police are frequently at, for example, the few gay clubs that exist outside asking for protection money to try to solicit bribes out of those few amount of Guatemalans that are willing to go publicly with their sexual orientation. Can you just direct me to the parts of the record talking about the police involvement? Yes, Your Honor, just one moment here. The administrative record at 683 and 721, as well as 693, discuss these sexual orientation threatening homosexual individuals with false drug charges to extort money and that they wait outside of clubs and bars frequented by sexual minorities and demand that gay patrons provide protection money. Even at the beginning of the report, it's discussed that this discrimination and violence against homosexuals and other sexual minorities is a significant problem in terms of human rights. Where is the, I'm looking at page 683, that's the front page of the Guatemala 2008 Human Rights Report. And I see that it says discrimination and violence against gay, lesbian, transvestite and transgender persons, but I didn't see where it talked about the police involvement in that. Your Honor, that's at 693 and 721. Fundamentally, the issue here is that the BIA, in approving the IJ's report as its own, switched the burden. Although Rozal had previously met this burden of proving past persecution by his emotional and physical persecution for being gay, including being brutally raped by his cousins as a 10-year-old boy, they reversed that burden and found that, in quotes, this Court has not been presented with sufficient evidence to establish that Rozal would face future persecution if returned to Guatemala. That is not the standard. Here it is the government's burden to provide that Rozal could safely return to Guatemala. Kagan. Counsel, counsel, that on the page before, on page 11, the, and I'm not going to read the whole thing to you, because you know in the first, second full paragraph, the IJ speaks of the burden being on the department, then states that the department has the burden, and then two paragraphs later states the department has established. And so I've now counted three, and then there's four on the next page where you would agree that the IJ clearly articulated the correct burden. Your Honor, while the IJ articulated that the burden was on the government, in applying it, in coming to this conclusion that the IJ had not presented with sufficient evidence, that is showing that Rozal was ultimately the one that had to come forward to prove that he would be faced with future persecution going back to Guatemala. The Petitioner did come forward with evidence. And so you read this as saying that the burden was placed on the Petitioner. If the IJ hadn't said this, wouldn't you be making the argument that the IJ did not consider the Petitioner's evidence in this case? Isn't this just a reflection of the IJ considering the evidence the Petitioner put forward? Well, Your Honor, in looking at the IJ's report, there is very little evidence that the IJ did consider any of the Petitioner's evidence, and failed to consider even the government's Department of State-Country report, which this Court has routinely held to be one of the most significant probative pieces of evidence in corroborating what a Petitioner's coming forward with. The IJ says the Court acknowledges that Guatemala is a country rife with random violence, where discrimination and harassment of homosexuals is present. While the evidence establishes that there are some corrupt and indifferent officials in Guatemala, then it concludes with the sentence you just read, this Court has not been presented with sufficient evidence to establish that the Respondent would face future persecution if returned to Guatemala. But, Your Honor, I would state that providing that discrimination and harassment of homosexuals is a very different thing than what's been presented in Mr. Rosal's evidence, which is that there's violence. In, I believe, 2006, there were – So the IJ got the standard right, and who had the burden, but reached the incorrect conclusion. Is that what you're saying? Your Honor, I think in providing that the Court has not been presented with sufficient evidence, it's both a statement that the IJ incorrectly flipped the standard and that they failed to consider the record as a whole, including the evidence opposed to its view. Assuming that we disagree with you about the IJ flipping the standard, we are looking to see whether the IJ's conclusion was supported by substantial evidence. So even though there is evidence that was presented by your client going the other way, what is it that makes the evidence that the IJ did rely on not substantial evidence? Well, Your Honor, as previously stated, the country report is the first piece of evidence. There's nothing in the country report that suggests that this discrimination and violence against homosexuals is limited to any one particular part of the country, or that these is one of the few cities in the country which actually has any amount of bars or clubs where gay patrons are potentially welcomed. Mr. Rizal also submitted significant information that there's a very few percentage of the gay persons in Guatemala who go to these clubs, which the IJ relies on heavily, and one of the very few organizations dedicated to gay rights in Guatemala City frankly says, they kill us in the villages, they kill us in the cities, and talks about the violence, including murders of several gay rights activists and organizers that are trying to put these together. The Frommer's Guide they rely upon heavily admits that in general it's a homophobic society with violence and a machista attitude, and the overall reality is very challenging for the gay and lesbians who live in Guatemala. And almost all the evidence in the record had a mixture of statements saying this is surprisingly gay-friendly, there is a community, etc. And so when the evidence goes both ways, why do we not just rely on the IJ's conclusion as long as there was evidence going, supporting the IJ's conclusion? Your Honor, I would submit that it is truly not a mixed amount of evidence, particularly where the IJ is not citing that it's considered this other evidence. And one of the primary articles that it's supported on is nothing more than basically a tourism sales pitch that you might find in an airline magazine under the Promotional Marketing Guide. And it is not corroborated by any of the rest of the evidence, which does not suggest that it's a homophobic country. I'd like to reserve my remaining time for rebuttal. We'll hear from the government. Good morning. May I please the Court? Jan Redfern for the respondent of the Attorney General. Your Honors, the government requests that this Court deny the petition for review. Substantial evidence supports the agency's determination that despite the fact that Petitioner experienced past persecution as a child in Guatemala based on this homophobic claim, that substantial evidence supports the immigration judge's finding that he could relocate to an area more welcoming to homosexuals and that it would be reasonable to do so. Now, regarding the Petitioner's claim about burden shifting, the respondent in its response brief noted that Petitioner didn't raise this argument on appeals, and thus failed to exhaust it. And in his reply brief, Petitioner states that he did exhaust this claim because he raised the proper standard on appeal to the Board, what the burden of proof was. But simply stating what the burden is is not the same thing as saying that the immigration judge got it wrong. It doesn't put the Board on notice of a claim of error such that it could address it, and that did not occur here. But even if he did exhaust this argument, he's clearly incorrect. A review of the immigration judge's decision, specifically pages 91 and 92, shows that the immigration judge understood what the burden was and applied the proper burden and put the government on the requirement to submit evidence to rebut the finding of past persecution. Assuming we agree with you on that, just for purposes of this argument, why was the IJ's conclusion based on substantial evidence? There was a lot of evidence going the other way, and the evidence the IJ relied on was, as opposing counsel says, more in the way of travel guides, and even those articles suggested that there were problems for gays in Guatemala. Well, the travel guides were specifically geared towards whether the Petitioner could relocate within Guatemala, because as you have recognized, I'm sure that the Department of State report really doesn't address specific areas within Guatemala. It's more of an overview of the general country. And that report stated that, as you noted, that homosexuality is not a criminal act. It did note that some homosexuals face indiscriminate violence or discrimination or harassment. But the fact that the immigration judge reviewed or relied upon travel guides does not mean that they're unreliable. It's simply what the evidence showed. That was the pertinent information that addressed whether homosexuals could have a fear of discrimination or violence within Guatemala. And so the immigration judge properly relied on that evidence. So you're saying that the travel guides were more focused on Guatemala City. Right. Guatemala City, and there were three other cities that were mentioned as well, but Guatemala City being the largest city, and then had the largest number of gay or pink businesses geared towards homosexuals, catered to homosexuals, and that homosexuals in the community visit. And there was an overwhelming amount of evidence that showed that Guatemala City is a gay-friendly city, and that homosexuals there enjoy the businesses that are established for the gay community. It would be disingenuous to suggest, as Petitioner attempts to, that the businesses that are geared towards homosexuals are only for the tourists, because the fact that they operate there means that the government of Guatemala allows them to operate and cater towards the gay community of Guatemala City, as well as the tourists that visit there. What is in the record regarding the city he was originally from? There is evidence in the record regarding, and I'm not going to be able to pronounce this correctly, Guztal Tanango. I didn't try. And it states that it's one of the cities that the immigration judge identified that the petitioner would be able to relocate within, if not living at his mother's home where his cousins were. That is also a large cosmopolitan city that has gay establishments as well. Although not as populated as Guatemala City, it does have some gay establishments there as well. And it's identified in the travel guides as a gay-friendly community as well. Is there anything in the record regarding the population of that city? It says that it's a large population, and I can't tell you off the top of my head what that was. It's somewhat smaller than Guatemala City, but the immigration judge did note that it was a well-populated city. I couldn't tell you what the numbers were, though. But regarding relocation, the petitioner's claim of past persecution was his claim at age 10 that he was sexually abused by his cousins, and he claimed that on return he would have to live, he would have no choice but to live in his mother's home, which was the same house as his cousins. But substantial evidence supports the agency's finding here that he could relocate away from his mother's house and that it would be reasonable for him to do so. There's evidence in the record that he moved from Guatemala at the age of 19 to the United States, that he didn't know English, that he knew few people here, and that he successfully settled here and was gainfully employed and has been over the last 20 years that he's been here. And he testified on page 137 of the record that there was no reason, as a 37-year-old man, he could not live elsewhere other than his mother's home in Guatemala. It's also reasonable for him to relocate. The immigration judge's finding is supported by the evidence that Petitioner is no longer a child who had to live with his mother, that he's 37, he's educated, has a year and a half of college under his belt, he's healthy, and he has a history of stable work employment, stable work history. He also lived away from his mother's home for the last 20 years of his life of being an adult. But beyond that, the immigration judge and the board went beyond the limited circumstances of Petitioner's past persecution claim and found, as we just discussed, that there are other areas within Guatemala that he could relocate and that it would be reasonable for him to do so. In the alternative, should the court disagree with the relocation finding of the agency, we would ask that the court remand this case to the Board of Immigration Appeals for it to make a determination as to whether Petitioner's convictions are particularly serious crimes that would render him as he argues in his brief before the court, because the board did not decide this issue, given the dispositive relocation finding. If there are no further questions, I'd just conclude by stating that substantial evidence supports the board's conclusion that the Petitioner could relocate within Guatemala to avoid the risk of persecution and that it would be reasonable for him to do so, and ask that the court deny the petition for review or, in the alternative, to remand this case to the Board of Immigration Appeals for it to make a determination as to whether Petitioner's convictions are particularly serious crime. Thank you. Thank you. Thank you. Have a minute for rebuttal. Very briefly, Your Honor, the government's only evidence that Mr. Rozal could, it would be reasonable for him to relocate in a different part of Guatemala is that he moved to L.A. 20 years ago. Very brief description. L.A. is one of the most gay-friendly cities in the world, with anti-discrimination protections for housing, for jobs, for any number of things on the basis of sexual orientation. Mr. Rozal credibly testified that he would have no housing, no family connections, and would be unable to get a job, which is corroborated by the evidence in the record, which states that many gay persons are required to keep their identities a secret or they will be fired for being gay. There's no such protections in Guatemala for doing so. Where he would be discriminated on all these bases, the government simply has not proved that it would be reasonable for him to relocate. You know what? One thing you might consider, and maybe you can tell me that it isn't worthy of consideration, there are organizations primarily gays, from your perspective, in Guatemala. Well, if there are enough gays to make up organizations primarily of gays, how can a court say gays can't live in Guatemala? Your Honor, may I have permission to extend my time to answer questions? The record supports that there is only one organization dedicated to gay activism. Maybe I misunderstood your testimony, but I thought you said all those places were primarily gays. Did you say that? What places, Your Honor? You mentioned certain places that were primarily gays, certain people were primarily gay in Guatemala. Didn't you? Your Honor. Didn't. The record reflects that there were and that there are. Yes, Your Honor. While there are. Then you're asking the court to say a gay can't live in a place that has enough gays to have these various organizations. Does that pose a problem for you? Your Honor, where there's a very limited amount of bars and clubs, which aren't even necessarily exclusively gay, but just accept gay patrons, you nonetheless have evidence from the State Department's report that the police are requiring bribes as protection money for those patrons who go to those clubs. I don't want to take you past. You're referring to things that we've read in the record. So I don't want to take you too far past your time. Well, just very briefly, that one oasis, the one organization, that activist has been personally kidnapped and other activists have been killed for simply trying to move forward. The fact that there's a very small community that is trying to make things better in a city does not rebut the fact that there's a very small community that is trying to make things better in a city does not rebut the fact that
judges: Black, Farris, Ikuta